1   WO

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Michael Manone,                          No. CV-15-08003-PCT-JAT

10                    Plaintiff,              **ORDER**

11  v.

12  Farm Bureau Property and Casualty
    Company,

13
                      Defendant.
14

15          Pending before the Court is Plaintiff Michael Manone ("Plaintiff")'s[1] Motion to

16  Amend Complaint and Motion to Remand. (Doc. 72). Plaintiff requests leave to file a

17  Fourth Amended Complaint ("FAC"), which reflects the severance of this case from

18  other related cases, revises the allegations to reflect only the issues specific to Plaintiff,

19  and removes the underinsurance claim. (*Id.* at 1). Defendant consents to Plaintiff's

20  Motion to Amend but disputes that this case should be remanded. (Doc. 73). The Court

21  now rules on the motion.[2]

22

23  _____

24      [1] Originally this case involved insurance-related claims by sixteen plaintiffs
    against fourteen defendants following a fire in Yarnell, Arizona during the summer of
    2013 ("Yarnell Hill Fire"). (Doc. 72 at 2). Despite the cases being severed in state court
25  (Doc. 1-1, Ex. D), the cases were removed together to federal court because separate case
    numbers were not assigned in state court, (*id.*, Ex. A). Upon request by the removing
26  defendants, *see* (Docs. 19, 21, 22, 25, 30, 40), the Court administratively severed the
    cases on May 1, 2015, (Doc. 60). Plaintiff is now litigating his claim separately against
27  Defendant Farm Bureau Property and Casualty Company ("Defendant").

28      [2] The Court will consider Plaintiff's motion as two separate motions: (1) Motion to
    Amend and (2) Motion to Remand.

## I.    Background

This case arises out of the Yarnell Hill Fire that occurred during the summer of 2013. (Doc. 72 at 2). The Yarnell Hill Fire destroyed the home of Robert Kramer, who, after reporting his loss to Defendant, received a portion of the insurance policy benefits allegedly owed to him. (*Id.*) During the pendency of his claim, Mr. Kramer purportedly assigned his insurance claim to Plaintiff. (Doc. 73 at 2).[3]

Plaintiff's proposed FAC removes an underinsurance claim but maintains Count 1 for "Breach of Contract" and Count 2 for "Breach of the Covenant of Good Faith and Fair Dealing/Bad Faith." (Doc. 72-1 at 2–3). Plaintiff argues that after removing the underinsurance claim, the amount in controversy of this case no longer meets the threshold for subject matter jurisdiction based on diversity. (Doc. 72 at 1–2).

## II.    Motion to Amend

Federal Rule of Civil Procedure ("Rule") 15 allows a party to amend a pleading with leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). Additionally, Rule 15 states that a court should "freely" give leave to amend "when justice so requires." *Id.* at 15(a)(2). Here, Plaintiff requests leave to file his FAC, a request that Defendant does not oppose. *See* (Doc. 73 at 3). Therefore, the Court will grant Plaintiff leave to file his FAC.

## III.    Motion to Remand

Plaintiff also requests that the Court remand this case to state court. (Doc. 72 at 4).[4] Plaintiff rests his Motion to Remand solely on the basis that the amount in controversy no longer exceeds the jurisdictional minimum for federal diversity cases. (*Id.* at 1–2). In response, Defendant argues that the jurisdictional amount is still satisfied thereby making remand improper. (Doc. 73 at 5).

---

[3] Defendant contends that Mr. Kramer's policy required its written consent to execute an assignment, which allegedly was never provided. (Doc. 72-1 at 2–3). The Court does not resolve the validity of the purported assignment here.

[4] Plaintiff's Motion to Remand is predicated upon the allegations in his FAC. *See* (Doc. 72). The Court will therefore analyze this motion based upon Plaintiff's proposed FAC which was filed as an attachment to the motion. *See* (Doc. 72-1).

## A.    Legal Standard

On January 6, 2015, this case was removed to federal court pursuant to 28 U.S.C. § 1441. *See* (Docs. 1, 60). However, "[i]f at any time . . . it appears that the district court lacks subject matter jurisdiction, the case [must] be remanded." 28 U.S.C. § 1447(c).

The United States Code specifies the requirements for federal subject matter jurisdiction based on diversity. Namely, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). The amount in controversy for diversity jurisdiction purposes is measured by the direct pecuniary value of the subject matter of the litigation. *See Thomson v. Gaskill*, 315 U.S. 442, 447 (1942); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Notably, the proponent of the federal court's jurisdiction bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006).

## B.    Analysis

The parties do not dispute that the diversity of citizenship requirement for federal subject matter jurisdiction based on § 1332(a) has been satisfied. *See* (Docs. 72 at 3; 73 at 3). Because Plaintiff is a citizen of Arizona and Defendant is incorporated in Iowa, *see* (Docs. 1-1 at 3; 72-1 at 1), the Court finds that the parties are "citizens of different states" pursuant to § 1332(a).

As to the amount in controversy requirement, Defendant claims that Plaintiff's contractual damages, attorneys' fees, interest, and public adjuster fees should all be included in the amount of controversy. (Doc. 73 at 3–4). Plaintiff concedes that the amount in controversy "could increase beyond [the contractual damage amount of] $51,384" but argues that "it appears unlikely the total recovery will exceed $75,000 unless Farm Bureau intends [to] run up legal fees or wants to present evidence showing it is likely that Mr. Manone will receive a substantial award of bad faith damages."

(Doc. 72 at 4).

Despite § 1332's "exclusive of interest and costs" language, in some circumstances, the amount in controversy may include legally recoverable elements such as attorneys' fees and other litigation costs. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that statutorily authorized attorneys' fees may be included in the amount of controversy); *Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) (including state court costs that have already been incurred and are associated with litigating the same claim in the amount in controversy). The Court will review each amount that Defendant proposes should be included in the amount in controversy.

### 1.    Contractual Damages

Plaintiff seeks to recover the remaining insurance coverage to be paid under Defendant's policy in the amount of at least $51,384. (Doc. 72-1 at 3). This value is of direct pecuniary consequence to the subject matter of this case. *See Hunt*, 432 U.S. at 347. Thus, the Court will include $51,384 in the amount in controversy.

### 2.    Attorneys' Fees

As noted above, the diversity jurisdiction statue expressly excludes "costs" from the amount in controversy. § 1332(a). According to the Ninth Circuit, however, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S*, 142 F.3d at 1156; *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

In Arizona, a prevailing party may receive a discretionary award of attorneys' fees "in any contested action arising out of a contract." Ariz. Rev. Stat. § 12-341.01(A). When contract and tort theories are both involved in a case, an award of attorneys' fees under § 12-341.01(A) is appropriate only when "the tort cause of action could not exist **but for** the breach of contract." *Robert E. Mann Constr. Co. v. Liebert Corp.*, 60 P.3d 708, 713 (Ariz. Ct. App. 2003) (citing *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1141

(1982)) (emphasis in original). The Arizona Supreme Court has outlined seven factors a court should weigh in determining whether to exercise its discretion to award attorneys' fees under § 12-341.01(A). *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Specifically, the seven factors are as follows: (1) "merits of the claim or defense presented by the unsuccessful party," (2) whether the "litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result," (3) whether "[a]ssessing fees against the unsuccessful party would cause extreme hardship," (4) whether "the successful party did not prevail with respect to all of the relief sought," (5) the "novelty of the legal question presented," (6) "whether such claim or defense had previously been adjudicated in this jurisdiction," and (7) whether the award would overly deter others from bringing meritorious claims or defenses in the future. *Id.*

If the Court were to conclude that awarding attorneys' fees was appropriate under *Warner*, it would then have to determine the reasonableness of the attorneys' fees, which is generally analyzed under the "lodestar method." *See, e.g.*, *Leavey v. UNUM/Provident Corp.*, 2006 WL 1515999, at *23 (D. Ariz. May 26, 2006) ("[T]he lodestar method is 'the centerpiece of attorney's fee awards.'" (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989))); *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 987 (Ariz. Ct. App. 1994) (applying the lodestar method and holding that it is improper to award a contingency fee amount without further inquiry into the reasonableness of the fee). The lodestar method of calculating reasonable attorneys' fees is a two-step process whereby a court multiplies "the number of hours reasonably expended by a reasonable hourly rate" and then determines if any of the identified lodestar factors favor enhancing or reducing the arrived at product. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

In this case, the Court finds that attorneys' fees should not be included in the amount in controversy because estimating the amount and reasonableness of the fees would require speculation. To be sure, Defendant did not owe Plaintiff or the former holder of the insurance policy (Mr. Kramer) any duty apart from the contractual

obligation to insure the property against losses. Thus, Plaintiff's tort action could not exist but for the breach of contract. However, the record does not reveal any evidence by which the Court could evaluate the seven factors outlined in *Warner*. Moreover, the Court cannot determine the reasonableness of the attorneys' fees under the lodestar method because the record does not contain an estimate of the number of hours that Plaintiff's attorneys would expend on this case or a reasonable hourly rate. It would be improper for the Court to consider attorneys' fees based exclusively on the contingency fee agreement. *See Sanborn*, 874 P.2d at 987.[5] For these reasons, determining the amount or reasonableness of Plaintiff's attorneys' fees proves entirely speculative at this juncture. *See Welsh v. N. H. Ins. Co.*, 843 F. Supp. 2d 1006, 1009–10 (D. Ariz. 2012) (holding that an unsubstantiated claim that attorneys' fees would likely exceed $25,000 was speculative and did not include the fees in the amount in controversy).[6] The Court will therefore not include attorneys' fees in the amount in controversy.

### 3.   Interest

The diversity jurisdiction statute also states that the matter in controversy is to be determined "exclusive of interest," 28 U.S.C. § 1332(a), despite the fact that interest is a legally recoverable element on any money judgment in a civil case recovered in a district court, 28 U.S.C. § 1961. The Supreme Court of the United States has held that interest is excluded from the amount in controversy if it is merely incidental to the plaintiff's claim or if it arises solely due to delay in payment of an obligation. *See Brown v. Webster*, 156 U.S. 328, 329–30 (1895); *see also Phx. Scotts-Sports v. Kadish*, 321 F. Supp. 556, 557

---

[5] Furthermore, when a party requests an award of attorneys' fees, the Local Rules of Civil Procedure for the District of Arizona require that "[a] complete copy of any written agreement, or a full recitation of any oral fee agreement, must be attached to the supporting memorandum." LRCiv 54.2(d)(2). Here, the only evidence before the Court is e-mail correspondence indicating Plaintiff's purported thirty-five percent (35%) contingency fee agreement with his counsel. *See* (Doc. 73-1, Ex. A).

[6] The fact that Plaintiff's complaint includes a contractual amount whereas the complaint in *Welsh* failed to include any dollar amount, *see* 843 F. Supp. 2d at 1009, does not provide a meaningful distinction because, here, as in *Welsh*, the record does not contain any evidence of the reasonableness of the attorneys' fee. Namely, there is no evidence as to the number of hours likely to be reasonably expended by Plaintiff's attorneys or a reasonable hourly rate.

(D. Alaska 1971) (noting that "interest on a judgment cannot be used to enhance the amount in controversy" because if it were "[o]therwise, a party could delay the suit in order to accumulate the jurisdictional amount").

Here, Defendant baldly claims that "[b]ecause this claim arose from June 29, 2013, the alleged interest owed would exceed $5,000." (Doc. 73 at 4). Although this amount may be legally recoverable, the Court finds that § 1332(a) precludes this interest from being included in the amount in controversy because it is merely incidental to Plaintiff's claim and arises solely from delay in payment of an obligation. *See Brown*, 156 U.S. at 329–30. The prejudgment interest Plaintiff seeks is incidental to the contractual damage allegedly owed under Defendant's policy because it would not be sought had Defendant timely paid pursuant to the policy. Consequently, the Court will not include any interest in the amount in controversy. *See Banuelos v. Colonial Life & Accident Ins. Co.*, 2011 WL 6106518, at *2 (C.D. Cal. Dec. 8, 2011) ("[P]rejudgment interest is expressly prohibited from inclusion in the amount in controversy requirement[.]" (citing § 1332(a)(1))).

### 4.    Public Adjuster Fee

Regardless of whether the public adjuster fee is included in the amount in controversy, the diversity jurisdictional minimum cannot be met.[7] Thus, the Court will not venture into this inquiry.

### C.    Conclusion

The Court concludes that Defendant has not met its burden of showing that the amount in controversy properly before the Court exceeds the requisite $75,000 to

---

[7] As part of his claimed tort damages, Plaintiff seeks to recover the fee of his Arizona-licensed public insurance adjuster, (Doc. 72-1 at 5), whose costs are "an amount equal to Thirty Three and One Third percent (33 1/3%) of all recoveries," (Doc. 73-1, Ex. B at 5). Thus, the public adjuster fee would be thirty-three and one-third percent (33 1/3%) of the contractual claim of $51,384, which equals $17,111. However, even if the Court were to find that the public adjuster fee should be included in the amount in controversy, the total amount in controversy would be the sum of Plaintiff's contractual claim ($51,384) and the cost of the public adjuster fee ($17,111), which is $68,495. This amount fails to exceed the threshold requirement of $75,000 for federal diversity jurisdiction. *See* § 1332(a).

establish subject matter jurisdiction based on diversity. *See* § 1332(a).

**IV.    Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Amend the Complaint (Doc. 72) is **GRANTED**. Plaintiff shall file an exact copy of the proposed Fourth Amended Complaint (Doc. 72-1, Ex. 1 at 1–6) by no later than three days from the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (Doc. 72) is prospectively **GRANTED**; upon the filing of the Fourth Amended Complaint, the Clerk of Court shall remand this case to the Yavapai County Superior Court, without further order of this Court.

**IT IS FINALLY ORDERED** that the Motion for Partial Summary Judgment (Doc. 77) shall remain pending before the state court judge.

Dated this 17th day of March, 2016.

James A. Teilborg
Senior United States District Judge